IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 2:06cr202-WKW |
| ) | |
| EUGENE CLECKLER and ) | |
| KIM CLECKLER ) | |

### RESPONSE OF THE UNITED STATES TO DEFENDANT EUGENE CLECKLER'S MOTION TO DISMISS

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and responds to Defendant Eugene Cleckler's Motion to Dismiss (the "Motion") as follows.

**I.  STATEMENT OF FACTS**

Eugene L. Cleckler ("Eugene") and Kim Cleckler ("Kim"), father and son, were equal partners in Gene's Marine Sales ("Gene's"), which was in the business of selling and repairing boats and accessories. Gene's principal place of business was in Clanton, Alabama. (Ind. ¶¶ 1a-1b) Ezy-Ryder, Inc. ("Ezy"), which operated out of the same business location in Clanton as Gene's, was a corporation in the business of constructing and repairing boats and selling boat trailers. Eugene was Ezy's sole shareholder. (Ind. ¶ 1c) At all relevant times, Tanya Morris (identified in the Indictment as "TM") was an employee of Gene's. (Ind. ¶ 1d) Cleveland Brown (identified in the Indictment as "CB") began working for Ezy and/or Gene's beginning in October 1999. (Ind. ¶ 1e)

In June 1996, the Internal Revenue Service ("IRS") began an audit of Gene's for the tax years 1994 and 1995. Shortly thereafter, the IRS revenue agent (the "Agent") assigned to conduct the audit expanded the scope of the audit to include the returns of Eugene, Kim, and Ezy. (Ind. ¶ 2)

Beginning in or about November 1996, at the direction of Eugene and with the assistance of Kim, Morris created fictitious documents that purported to show amounts that Gene's had either paid to or owed to its suppliers. The purpose of creating these documents was to make it appear as if Gene's had higher expenses (and therefore lower taxable income) than it actually had for 1994 and 1995. (Ind. ¶ 5)

In or about December 1996, Eugene and Kim willfully caused a summary of the fictitious documents to be presented to the Agent. The summary reflected purported expenses totaling approximately $525,000 in excess of the actual amount. (Ind. ¶ 6)

Beginning in or about May 2000 and continuing through in or about November 2000, at the direction of Eugene and with the assistance of Kim, Morris and Brown created fictitious and altered documents as follows:

(a)   fictitious documents that purported to be invoices from Ezy to Ezy customers,

(b)   fictitious documents that purported to be handwritten quotations from Ezy to Ezy customers, and

(c)   Ezy bank deposit slips that had been altered to make it falsely appear that the source of the deposit was the customer identified in the fictitious Ezy invoice.

Eugene and Kim's purpose in causing the creation of these documents was to make it appear as if revenue earned by Gene's was in fact earned by Ezy. This was advantageous to Eugene and Kim because Ezy's losses would have offset the revenue, and therefore neither Kim nor Eugene would have owed any additional taxes. On the other hand, if the IRS concluded that Gene's had earned the revenue, Gene's income, and therefore Eugene and Kim's taxes, would have increased substantially. (Ind. ¶ 7)

Between in or about August 2000 and November 2000, Eugene and Kim willfully caused their attorney, Edward Selfe (identified in the Indictment as the "Attorney") to produce the fictitious and altered documents to the Agent. (Ind. ¶ 8) On August 8, 2000, Selfe delivered false Ezy invoices to the Agent.[1] (Ind. ¶ 9d) On or about August 23, 2000, Brown transported false Ezy documents to Selfe's office in Birmingham. (Ind. ¶ 9e) On November 16, 2000, Selfe delivered false Ezy documents to the Agent. (Ind. ¶ 9f)

Based on these facts, the Indictment charges Eugene and Kim with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1), and one count of obstructing the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Count 1 charges that between approximately November 1996 and November 2000, the Clecklers conspired among themselves and with Morris and Brown to defraud the United States with the purpose of impeding the IRS's ascertainment and collection of income taxes, and the indictment alleges several overt acts taken in furtherance of the conspiracy. Count 2 charges that between approximately May 2000 and November 2000, the Clecklers obstructed the IRS by causing the presentation to the IRS of forged and altered documents.

## II.   COUNT 1 (CONSPIRACY) IS NOT DUPLICITOUS

Eugene claims that the Indictment is duplicitous, arguing that the Indictment charges two separate conspiracies in the same count, relying primarily on the length of time between the conduct that took place in late 1996 and the conduct that occurred in 2000.

In considering Eugene's Motion, the Court's inquiry is limited. The Court's "task is not to review the evidence [to be] presented at trial to determine whether it would support charging several

---

[1] There is no allegation that Selfe knew that the documents were fraudulent.

crimes rather than just one, but rather solely to assess whether the indictment itself can be read to charge only one violation in each count."[2] Therefore, the issue of single versus multiple conspiracies is not susceptible to determination by the court, particularly on a motion to dismiss.[3]

The issue of the length of time between criminal conduct charged in an Indictment is especially ill-suited to determination on a motion to dismiss, since the Government benefits from a presumption that a conspiracy once formed will continue:

> A conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated. A defendant can overcome this presumption of continued participation only by showing that he affirmatively withdrew from the conspiracy or that the final act in furtherance of the conspiracy has occurred.

*United States v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003). Moreover, "[t]he duration and termination of a conspiracy is determined by the particular facts of each case." *United States v. Varella*, 692 F.2d 1352, 1362 (11th Cir. 1982). Given the presumption in favor of the government on this issue and the fact based nature of the question, a claim that a conspiracy terminated as a result of a period of inactivity is simply not suitable for resolution on a motion to dismiss.

Applying this law here, there is no defect on the face of the Indictment that would warrant dismissal. Three factors determine whether a single conspiracy exists: "(1) whether there was a common goal, (2) the nature of the scheme, and (3) the overlap of the participants." *United States*

---

[2] *United States v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir. 1983); *accord United States v. Sharpe*, 193 F.3d 852, 866 (5th Cir. 1999); *United States v. Stickle*, 355 F. Supp. 2d 1317, 1330 n.12 (S.D. Fla. 2004), *aff'd on other grounds*, 454 F.3d 1265 (11th Cir. 2006).

[3] *See United States v. Allison*, 908 F.2d 1531, 1535 (11th Cir. 1990) ("The question of single versus multiple conspiracies is one for the jury."); *United States v. Panhandle Trading, Inc.*, 2006 WL 1883436, *4 (N.D. Fla. July 7, 2006) (denying motion to dismiss indictment based on claim that indictment charged as a single conspiracy actions that defendants contended were multiple conspiracies).

*v. Anderson*, 326 F.3d 1319, 1326 (11th Cir. 2003). Here, there was a common goal: minimizing the amount of taxes that would be assessed against Eugene and Kim as a result of the audit. The nature of the scheme was the same throughout: the use of fraudulent documentation to make it appear that Gene's had lower taxable income than it actually had–in 1996, by inflating Gene's expenses; in 2000, by falsely attributing revenue to Ezy that Gene's had earned. Finally, the participants substantially overlap: with respect to the 1996 conduct, Eugene and Kim acted with their employee Morris; in 2000, it was again Eugene, Kim, and Morris, along with Brown, who had recently been hired. Therefore, the Indictment appropriately alleges a single conspiracy to defraud the IRS.

## CONCLUSION

For the reasons set forth above, the United States requests that the Court deny the Motion.

Respectfully submitted this the 15th day of November, 2006.

>LEURA G. CANARY
>UNITED STATES ATTORNEY
>
>s/Andrew O. Schiff
>ANDREW O. SCHIFF
>Assistant United States Attorney
>One Court Square, Suite 201
>Montgomery, AL 36104
>Phone: (334) 223-7280
>Fax: (334) 223-7135
>E-mail: andrew.schiff@usdoj.gov
>Bar ID 43641

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>EUGENE CLECKLER and )<br>KIM CLECKLER )  | CR. NO.  2:06cr202-WKW |

### CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: George Beck, Esq., and Ronald Brunson, Esq.

                                              Respectfully submitted,

                                              s/Andrew O. Schiff
                                              ANDREW O. SCHIFF
                                              Assistant United States Attorney
                                              One Court Square, Suite 201
                                              Montgomery, AL 36104
                                              Phone: (334) 223-7280
                                              Fax: (334) 223-7135
                                              E-mail: andrew.schiff@usdoj.gov
                                              Bar ID 43641