IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )    CASE NO. 2:06-CR-202-WKW |
| EUGENE L. CLECKLER, | ) ) ) |
| Defendant. | ) |

### ORDER

      This matter is before the court on the defendant's Motion for New Trial (Doc. # 86). The court has carefully considered the grounds set forth in the motion and the Government's opposition. For the reasons stated herein, defendant's motion is due to be denied.

### I. BACKGROUND

      On January 12, 2007, a jury convicted Eugene Cleckler on both counts of a two count indictment involving tax matters. Count 1 stated a charge for conspiracy to defraud the United States Government of income taxes in violation of Title 18, sections 371 and 2(b) of the United States Code. Count 2 alleged that the defendant corruptly obstructed and impeded the administration of the internal revenue laws in violation of Title 26, section 7212(a), and Title 18, section 2 of the United States Code. Also charged in both counts was Kim Cleckler, the defendant's son, who was acquitted of all charges by the same jury. The indictment arises out of the business records and activities of two companies owned or controlled by the defendant. Defendant was accused of falsifying or causing to be falsified records of boat and trailer sales and repairs in order to understate income tax obligations during an audit by the Internal Revenue Service. Employees involved in

falsifying records testified against Cleckler. Two such employees, Tanya Morris ("Morris") and Cleveland Brown ("Brown"), specifically testified that the defendant instructed them to falsify records for purposes of the audit.

The defendant raises three grounds he says entitle him to a new trial. First, he asserts he was entitled to a mistrial on the Government's failure to disclose "critical impeachment information" regarding Morris and Brown. (Mot. New Tr'l 1.) This relates to alleged immunity from prosecution for one or both of these witnesses. Second, the defendant claims that his tax attorney was forced to testify to privileged attorney-client communications which were outside the scope of the crime-fraud exception. Third, he complains that the court admitted certain audit reports over his objections that constituted prejudicial hearsay observations and conclusions of the IRS auditor. The court will address each of these grounds in turn.

## II. STANDARD

Rule 33 of the Federal Rules of Criminal Procedure states "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." Fed. R. Crim. P. 33. The decision whether to grant a new trial is within the sound discretion of the trial judge. *United States v. Champion,* 813 F.2d 1154, 1170 (11th Cir. 1987).

## III. DISCUSSION

*A.    Immunity and Impeachment*

After neither was employed any longer by the defendant's companies, Brown asked Morris if she would back him up if he went to the authorities with evidence of the defendant's dishonesty during the IRS audit - - Morris said that she would. (Trial Tr. vol. 2, 413, Jan. 11, 2007.) In a subsequent conversation, Morris testified that Brown called her to inform her that he had met with

Special Agent Kyle Clark ("Agent Clark") and that she should meet Agent Clark at a certain time and place to "tell the government what had happened . . . . " (*Id.*) She testified that Brown also told her that "as long as we cooperated, we would not be prosecuted for this." (*Id.* at 414.)[1] Asked whether she confirmed that she would not be prosecuted "before [she] began [her] conversation that day" with Agent Clark, Morris answered, "Yes sir. That was one of the first things that Kyle said to me." (*Id.* at 417.) Agent Clark remembered the exchange differently. He testified that the conversation with Morris occurred before an investigation had been commenced by the IRS. At the pre-investigation stage, "we can't proceed on interview . . . .[I]f someone wants to come forward to me and give information, I can take it. I cannot go out and contact independent third parties and request information from them . . . . [I] can't contact individuals and ask them questions." (Trial Tr. vol. 3, 613-14, Jan. 12, 2007.) According to Agent Clark, a formal investigation cannot be instituted without a request to the IRS and authorization to investigate.

> Agent Clark then gave his account of this meeting with Morris:
>
> My recollection is that upon her giving me the information, I was escorting them out of our office. And as she was going into the hallway, she stated that, am I going to get in trouble for this. And I then told her the basic Internal Revenue Service policy in regards to this information . . . [w]hich is . . . if we have an investigation on someone, then we, before we talk to them, have to notify them of that. And we have to read them what is our noncustody rights, which in summary say you do not have to answer any of my questions. You do not have to respond. You don't have to say anything that incriminates you, and you're entitled to an attorney before you talk to me. It's basically like custody rights, but we do this in a noncustody situation. And I told her that I didn't have an investigation on her, that her rights had not been read to her, and that anything that she had told me that day would not be used - - I could not use it against her in any form of prosecution.

---

[1] On cross-examination, Brown repeatedly denied any remembrance of the specifics of this conversation, and repeatedly denied that he was offered any immunity from prosecution at any time by anyone.

(*Id.* at 615.) Though he had every opportunity to do so after the disclosure in trial, the defendant did not examine Agent Clark on the matter, nor did he attempt to impeach Morris as to motive or any other impeachment issue related to immunity. He simply established that Agent Clark's assurances were "important" to her and that Morris had not been prosecuted "as of yet." (Trial Tr. vol. 2, 418.)

At the conclusion of Morris's testimony, counsel for defendant raised a *Giglio* objection (*Id.* at 418), and later the same trial day claimed surprise and asked for a mistrial. (*Id.* at 486.) Counsel for defendant did not ask for a recess to consider the matter, nor did he recall either Morris or Agent Clark for further cross-examination. As noted above, the defendant cross-examined Agent Clark after the disclosure, but never asked him about the immunity issue. In his motion, the defendant fails to allege any prejudice other than the "disclosure was required before trial for effective use in opening statements and cross-examination." (Mot. New Tr'l 2.)

The court is not convinced that a *Giglio* issue was raised by this exchange, but assuming for the sake of argument that the pre-trial disclosure of this information was required, the defendant has demonstrated no prejudice to his defense. Because the relevant facts were elicited on cross-examination, "[t]he jury had the benefit of [the information] insofar as it might have affected [the witness's] credibility." *United States v. Nixon,* 634 F.2d 306, 313 (5th Cir. 1981). The defendant has failed to demonstrate that the cross-examination or his overall trial strategy would have been aided by the information.

Because the actions of defendant belie his suggestion of surprise and prejudice, he is not entitled to a new trial on this ground.

**B.**     *Testimony of Tax Attorney*

Cleckler's tax attorney, Mr. Ed Selfe, was directed to testify over the claim of attorney-client privilege. (Trial Tr. vol. 1, 15-26, Jan. 12, 2007; Trial Tr. vol. 2, 272-73.) Defendant submits that Mr. Selfe was directed to testify about "all facits of the IRS audit" even though none of his representation prior to 2000 was in furtherance of the fraud allegations. (Mot. New Tr'l 3.) Defendant mischaracterizes the testimony of Mr. Selfe. He testified he was retained by the two businesses and the two Clecklers in 1999 "to represent them in appealing to the - - what's called the appellate division of the Internal Revenue Service . . . ." (Trial Tr. vol. 2, 268-69.) The testimony established that Cleckler submitted fraudulent documents to Mr. Selfe, who in turn submitted them to the IRS in the course of his representation of Cleckler and others. The court ruled that the Government had demonstrated a substantial need, and that the crime-fraud exception to the attorney-client privilege and work product protection was applicable. *See Clark v. United States*, 289 U.S. 1, 15 (1933) (holding that the attorney-client privilege does not protect communications made in furtherance of a crime or fraud). Because defendant fails to specify what "tax advice and strategy should have been protected from disclosure" (Mot. New Tr'l 3.), the court cannot analyze the objection further. The ruling on the matter was correct according to law, and the defendant is not entitled to a new trial on this ground.

**C.**     *Hearsay*

Cleckler cites the admission of the Government's Exhibit 24 as improper because it "relied completely on facts that Janice Hull provided [to the IRS auditor]." (Mot. New Tr'l 3). Because Exhibit 24 does not refer to any statement by Ms. Hull, this ground for new trial is likewise without merit.

## IV.  CONCLUSION

Because Cleckler fails to establish any ground for a new trial, his motion for new trial (Doc. # 86) is DENIED.

DONE this 27 th day of June, 2007.

                                          /s/  W.  Keith Watkins
                                    UNITED STATES DISTRICT JUDGE