Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

---

March 19, 2008

**Appeal Number: 07-13184-CC**
Case Style: USA v. Eugene L. Cleckler
District Court Number: 06-00202 CR-W-N

TO:  Debra P. Hackett

CC:  Ronald R. Brunson

CC:  Sandra J. Stewart

CC:  Administrative File

# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

March 19, 2008

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

**Appeal Number: 07-13184-CC**
Case Style: USA v. Eugene L. Cleckler
District Court Number: 06-00202 CR-W-N

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: three folders, one envelope, one psi
    Original record on appeal or review, consisting of: seven volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
For the Eleventh Circuit

No. 07-13184

District Court Docket No.
06-00202-CR-W-N

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Feb 19, 2008

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

versus

EUGENE L. CLECKLER,

    Defendant-Appellant.



A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court
for the Middle District of Alabama

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
MAR 1 9 2008
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:    February 19, 2008
For the Court:    Thomas K. Kahn, Clerk
By:    Jackson, Jarvis

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 19, 2008
THOMAS K. KAHN
CLERK
```

No. 07-13184
Non-Argument Calendar

D. C. Docket No. 06-00202-CR-W-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENE L. CLECKLER,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(February 19, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Eugene Cleckler appeals his convictions and sentences for

conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 371 and 2, and for corrupt or forcible interference with the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2. After review, we affirm.

## I. Alleged Giglio Violation

Defendant Cleckler owned a business called "Ezy-Ryder" and co-owned another business called "Gene's Marine." Tanya Morris and Cleveland Brown are Cleckler's former employees. Morris and Brown testified that they falsified documents to reflect sales by Ezy-Ryder that were actually attributable to Gene's Marine. Cleckler submitted the fabricated documents to the Internal Revenue Service ("IRS") during its audit into the proper allocation of income among Gene's Marine and Ezy-Ryder.

In arguing on appeal for a new trial, Cleckler alleges that the government had immunity agreements with witnesses Morris and Brown and failed to disclose them, thereby violating the district court's standing discovery order and its obligations under Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972).[1]

---

[1] Where a witness's credibility is at issue, the government's obligation under Brady includes the disclosure of "evidence of any understanding or agreement as to a future prosecution" of such witness for impeachment purposes. Giglio, 405 U.S. at 154-55, 92 S. Ct. at 766 (citing Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963)).
  We review for an abuse of discretion the district court's denial of a motion for new trial based on a claim that the government failed to disclose material evidence. United States v. Brown, 441 F.3d 1330, 1350 (11th Cir. 2006), cert. denied, 127 S. Ct. 1149 (2007).

Cleckler contends that information about these immunity agreements was material to his defense, as the government's case hinged on the credibility of these witnesses. Cleckler has not shown reversible error for two reasons.

First, Cleckler has not proved that either witness actually had an immunity agreement with the government in exchange for testimony against Cleckler. Brown denied having any discussion with IRS Agent Kyle Clarke regarding immunity from prosecution in exchange for his testimony.[2] Morris did testify that when she met with Agent Clarke, she confirmed with him that she would not be prosecuted, but Morris never stated that Agent Clarke explained she would not be prosecuted <u>in exchange for</u> her testimony. There is no evidence that the government's decision to forgo prosecution was in exchange for her testimony.

Rather, Agent Clarke's testimony demonstrates that no such immunity agreement existed. Agent Clarke testified about the meeting with Morris and Brown. According to Agent Clarke, after the meeting, Morris asked if she was "going to get in trouble for this." Agent Clarke explained this IRS policy: before the IRS talks to a person, if the person is under investigation, the IRS must notify her that she is under investigation and does not have to answer any questions.

---

[2] Morris did testify that Brown told her the government would not prosecute them if they provided information, but Morris also admitted that she only assumed Agent Clarke told this to Brown and she did not know if Brown ever actually talked to anyone from the government about immunity.

3

Agent Clarke told Morris that because he did not have an investigation on her and her IRS non-custody rights had not been read to her, he could not use anything she told him in prosecution against her. Thus, according to Agent Clarke, he merely informed Morris that her statements that day could not be used against her and never indicated that she would not be prosecuted based on her willingness to testify.

Second, and even if a factual issue exists as to whether Morris and Brown believed they had immunity agreements, Cleckler has not shown that he suffered prejudice in the delayed disclosure of the alleged agreements. "Delayed disclosure may be grounds for reversal, but only if the defendant can show prejudice, e.g., the material came so late that it could not be effectively used." United States v. Bueno-Sierra, 99 F.3d 375, 379 (11th Cir. 1996) (quotation marks and citation omitted). In this case, Cleckler's attorney had the full opportunity to cross-examine Morris, Brown, and Agent Clarke after Morris's testimony, and, in fact, did question Morris and Brown about their understanding regarding potential prosecution. See id. at 379-80 (noting that prejudice was averted on Brady claim where, following delayed disclosure, additional cross-examination of the witness was allowed and impeaching material was fully explored). Accordingly, we cannot say the district court erred in denying Cleckler's motion for a new trial.

## II. Crime-Fraud Exception

Cleckler next argues that the district court improperly compelled his attorney Edward Selfe to testify concerning privileged information under the crime-fraud exception.[3] "The attorney-client privilege does not protect communications made in furtherance of a crime or fraud." In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1226 (11th Cir. 1987). We employ a two-part test to examine the applicability of the crime-fraud exception:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

Cox v. Adm'r U.S. Steele & Carnegie, 17 F.3d 1386, 1416 (11th Cir. 1994) (citation omitted). "The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." Schroeder, 842 F.2d at 1226. "The second

---

[3] We review the district court's findings on the applicability of both prongs of the crime-fraud exception for an abuse of discretion. See In re Grand Jury (G.J. No. 87-03-A), 845 F.2d 896, 898 (11th Cir. 1988); In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1226-27 (11th Cir. 1987).

As an initial matter, Cleckler's brief makes a passing reference to protected "attorney work product" that Selfe was ordered to reveal. Because Cleckler failed to develop an argument on this issue, he abandoned it. See United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003).

prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." Id. at 1227.

In this case, Selfe represented defendant Cleckler in his appeal of IRS Agent Frank Brand's finding that funds deposited into Ezy-Ryder's account actually represented sales by Gene's Marine. Selfe told Cleckler it would be helpful to document any sales Ezy-Ryder made of boats or trailers to third parties. Selfe later received documentation from Cleckler, including invoices and deposit slips, and produced them to Agent Brand. Agent Brand requested additional documentation to support the submitted invoices. Selfe asked Cleckler if he had any additional documentation, and Cleckler provided the alleged back-up documentation.

In his brief on appeal, Cleckler argues the following testimony by Selfe violated the attorney-client privilege:

> [Government's lawyer]: Did you speak with Gene Cleckler about Frank Brand's request for additional documentation?
> [Selfe]: Yes, I did.
> [Government's lawyer]: Can you describe that conversation, please.
> [Selfe]: I cannot describe the conversation other than to say I asked him if there was any backup information to support those invoices.
> [Government's lawyer]: And what was Mr. Cleckler's response?
> [Selfe]: He said he would make an–my best recollection is that he said he would make an investigation and see.

We cannot say the district court abused its discretion in finding that Selfe's above testimony fell within the crime-fraud exception to the attorney-client

privilege.[4]  Here, the evidence shows that the IRS reported that Cleckler owed additional taxes and that Cleckler obtained Selfe's representation in the wake of that IRS report.  After Selfe told Cleckler it would help his IRS appeal to produce documents of Ezy-Ryder's sales to third parties, Cleckler submitted fabricated documents, through Selfe, to Agent Brand that reflected fictitious third-party sales by Ezy-Ryder.  Cleckler further submitted additional fabricated documents after Agent Brand's request for back-up documentation.  Cleckler submitted these fabricated documents as part of his ongoing conduct to defraud the IRS.  Thus, Cleckler "committed a crime or fraud subsequent to receiving the benefit of

---

[4]Cleckler's brief cites only to "R2-276" for the attorney conversation.  However, Selfe testified regarding another conversation with Cleckler at R2-270-71, as follows:
> [Government's lawyer]: Now, did you ask Gene Cleckler whether Ezy-Ryder had sold boats to customers other than–other than Gene's Marine?
> [Selfe]: Yes, I did.
> [Government's lawyer]: Okay. . . . What was Mr. Cleckler's response–Mr. Gene Cleckler's response to your question about Ezy-Ryder sales to third parties?
> [Selfe]: Well, my best recollection is he did think that there were some sales of boats or trailers by Ezy-Ryder to third parties.
> [Government's lawyer]: And did you talk to Eugene Cleckler about documenting those third-party sales?
> [Selfe]: I did say that if Ezy-Ryder did sell boats or trailers to third parties, it would be helpful to document those sales.

The arguments in Cleckler's brief seem broader than the conversation above, and there is an issue as to whether Cleckler adequately challenged this conversation as well.  We need not resolve these questions because, as to this conversation, our analysis of the crime-fraud exception would apply equally to this testimony.  To the extent Cleckler appeals Selfe's testimony "about all facets of the IRS audit," the attorney-client privilege does not apply to conversations that Selfe had with people other than Cleckler, for instance, an IRS administrative officer.  See Schroeder, 842 F.2d at 1224-25 ("The attorney-client privilege attaches only to communications made in confidence to an attorney by that attorney's client . . . ." (emphasis added)).

7

counsel's advice." Cox, 17 F.3d at 1416. As to the second prong, the communications at issue were related to the fraudulent activity: Cleckler obtained Selfe's assistance to further his fraudulent activity and used Selfe to provide additional fabricated documents to Agent Brand.

### III. Alleged Hearsay Violation

Cleckler also argues that the district court improperly admitted into evidence IRS reports and memoranda that contained inadmissible hearsay statements.[5] Specifically, the district court admitted government's exhibit 25, a work paper that Agent Brand prepared during his audit of Ezy-Ryder and as part of his official duties for the IRS.[6] Exhibit 25 outlined Agent Brand's findings and contained the hearsay statements of Cleckler's former accountant Janice Hull. The district court admitted exhibit 25 as both a record of a regularly conducted business activity and a record of a public agency, under Federal Rules of Evidence 803(6) and 803(8)

---

[5]We review the district court's evidentiary rulings for clear abuse of discretion. United States v. Dickerson, 248 F.3d 1036, 1046 (11th Cir. 2001). The district court's factual findings concerning the trustworthiness of a business or public record are "reversible only if clearly erroneous." United States v. Petrie, 302 F.3d 1280, 1288 (11th Cir. 2002).

[6]Cleckler also alleges that the district court admitted other government exhibits "that each contained many alleged witness statements and conclusions by the tax auditor." Some of the exhibits that Cleckler identifies were not even admitted by the district court. As to the one exhibit that was admitted, exhibit 101, Cleckler fails to identify the particular statement or statements that should not have been admitted. Because Cleckler did not develop this argument in his brief, we deem it abandoned. See Jernigan, 341 F.3d at 1284 n.8. In any event, exhibit 101 was an IRS form prepared by Agent Brand that contained his conclusions about what changes should be made to Gene's Marine tax returns, and Cleckler has shown no reversible error as to the admission of exhibit 101.

respectively.

The government argues that Cleckler has not shown that the district court abused its discretion in admitting exhibit 25, as the document fell within both the business records and public records exceptions to the hearsay rule. Further, the government points out that Cleckler has not demonstrated that the district court's finding that exhibit 25 was otherwise trustworthy was clearly erroneous. We need not resolve these issues because we readily conclude that any alleged error in admitting exhibit 25 was harmless in any event. Through the testimony of Selfe, Morris, and Brown, and some of the fabricated documents in issue, the government clearly established that Cleckler directed the fabrication of documents reflecting fictitious third-party sales and that he submitted these documents to the IRS. Given the overwhelming evidence of Cleckler's guilt, we conclude that any such error would have been harmless.

### IV. Obstruction-of-Justice Enhancement

Finally, Cleckler argues that the district court improperly applied an obstruction-of-justice enhancement to his advisory sentencing guidelines calculation, under U.S.S.G. § 3C1.1, based on his trial testimony.[7] Cleckler

---

[7] We review the district court's factual findings for clear error and the application of the guidelines to those facts de novo. United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006). However, we "accord great deference to the district court's credibility determinations" in reviewing "an obstruction of justice enhancement based on perjury." United States v. Singh, 291

9

contends that the enhancement is not intended to punish a defendant for exercising his constitutional right to deny or refuse to admit his guilt. According to Cleckler, he did not perjure himself at trial by concocting false, alternative factual scenarios; rather, he merely denied the events as portrayed by Brown and Morris.

Section 3C1.1 of the Sentencing Guidelines provides for a two level enhancement if:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to . . . [the] offense of conviction and any relevant conduct . . . .

U.S.S.G. § 3C1.1 (2000). Examples of covered conduct include "committing, suborning, or attempting to suborn perjury." Id. at cmt. n.4(b).

A sentence enhancement based on a finding of perjury does not chill a defendant's right to testify, because "a defendant's right to testify does not include a right to commit perjury." United States v. Dunnigan, 507 U.S. 87, 96, 113 S. Ct. 1111, 1117 (1993). For purposes of a § 3C1.1 enhancement, we have adopted the Supreme Court's definition of perjury as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Singh, 291 F.3d 756, 763

---

F.3d 756, 763 (11th Cir. 2002).

(11th Cir. 2002) (quoting Dunnigan, 507 U.S. at 94, 113 S. Ct. at 1116). Accordingly, four elements must be met to support a finding of perjury: (1) the defendant testified under oath; (2) the testimony was false; (3) the testimony was material; and (4) the testimony was "given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." Id. at 763 n.4.

Upon review of the record and the parties' briefs, we discern no error with regard to the application of the § 3C1.1 enhancement here. The record belies Cleckler's contention that the district court imposed the enhancement merely because he testified and was found guilty. Rather, the district court conducted an independent review of the record and made specific findings of perjury, which are supported by the record and are not clearly erroneous.

For all of these reasons, we affirm Cleckler's convictions and sentences.

**AFFIRMED.**

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia